ROSCOE POE, EMPLOYEE v. ACME BUILDERS, EMPLOYER, AND IOWA NA-
TIONAL MUTUAL INSURANCE COMPANY, INSURANCE CARRIER

No. 8310IC783

(Filed 19 June 1984)

**Master and Servant § 55.1— workers' compensation—injury while shifting position
—no injury by accident**

> Plaintiff did not suffer a compensable injury by "accident" when he sus-
> tained a knee injury in shifting from a bending to a squatting position while
> shingling a roof where plaintiff was hired to perform a number of tasks con-
> nected with his employer's business of home improvement, plaintiff had
> already worked on another shingling job prior to the one during which he sus-
> tained his injury and shingling was therefore one of plaintiff's usual and
> customary duties, and there was no evidence that plaintiff unduly exerted
> himself or made any unusual movements in changing his position.

APPEAL by defendants from North Carolina Industrial Com-
mission. Opinion and Award entered 5 May 1983. Heard in the
Court of Appeals 2 May 1984.

Defendants are appealing an order and award of the Industri-
al Commission which reversed an order of the Deputy Commis-
sioner and awarded workers' compensation benefits to plaintiff on
the grounds that plaintiff suffered an injury as a result of an acci-
dent arising out of and in the course of employment. The plaintiff
employee had alleged in his claim that he sustained a knee injury,
a torn medial meniscus, while working on a shingling job for
defendant employer Acme Builders (hereinafter "Acme").

The parties are in substantial agreement as to the facts and
circumstances leading up to plaintiff's claim, which are as follows:
In June 1982, at the time of the alleged injury by accident, plain-
tiff had been employed by Acme Builders, a home improvement
and remodeling business, for three or four months. Although
plaintiff stated he was "hired as a carpenter," it appears from his
testimony and also from the testimony of Acme's owner, that
plaintiff was hired to and in fact performed a variety of tasks
related to the home improvement business, including interior
remodeling, constructing rooms, putting up aluminum siding, in-
stalling storm windows and doors, and shingling roofs.

Acme's owner testified that plaintiff, like all of Acme's
employees, was not hired to do any one particular job, but to do

"anything that comes to hand." Prior to the date of the incident upon which he bases his claim, plaintiff had done shingling for Acme on one other occasion, that occasion being during the only other roofing job Acme had obtained since plaintiff was hired by them.

In June 1982, Acme accepted the reshingling job in question. Plaintiff and other employees were assigned to work on this job. On the second day of the job, either the 17th or 18th of June 1982, at about 11 a.m., plaintiff, who had been on the job since about 7 a.m. that morning, allegedly injured his knee when he shifted his body from a bending posture to a kneeling or squatting position. According to plaintiff's testimony, when he changed position in this fashion, his "knee kind of popped and stung." Plaintiff was nevertheless able to continue to work for the remainder of that day and for some days thereafter, finally seeking medical treatment on 9 July 1982. Plaintiff's problem was diagnosed as a torn medial meniscus, which was ultimately treated by surgery. Plaintiff then sought workers' compensation benefits.

In the order and award issued upon the hearing of plaintiff's claim, the Deputy Commissioner found that plaintiff sustained an injury to his knee while working, but concluded that since the injury was sustained while performing assigned duties in a customary fashion, the injury did not occur by accident and was not therefore compensable. Upon plaintiff's appeal to the full Commission that body reversed, finding that shingling constituted an interruption of the plaintiff's work routine and that his injury was accidental and that he was entitled to compensation. From the order of the Industrial Commission awarding plaintiff workers' compensation benefits, defendants appeal.

*McNairy, Clifford & Clendenin, by Harry H. Clendenin, III, for plaintiff appellee.*

*Tuggle, Duggins, Meschan, Thornton & Elrod, P.A., by Sally A. Lawing, for defendant appellants.*

VAUGHN, Chief Judge.

The sole issue on appeal is whether plaintiff's injury was the result of an accident arising out of and in the course of employ-

ment and therefore compensable under North Carolina's Workers' Compensation Act. We hold that the injury did not occur as a result of such an accident and reverse the decision of the Industrial Commission.

> Under the North Carolina Workers' Compensation Act, an injury arising out of and in the course of employment is compensable only if caused by an "accident." . . . "Our Supreme Court has defined the term 'accident' as used in the Workers' Compensation Act as 'an unlooked for and untoward event which is not expected or designed by the person who suffers the injury . . . .' The elements of an 'accident' are the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences."

*Adams v. Burlington Industries*, 61 N.C. App. 258, 260, 300 S.E. 2d 455, 456 (1983) (citations omitted). *See also Harding v. Thomas & Howard Co.*, 256 N.C. 427, 428, 124 S.E. 2d 109, 111 (1962) (defining accident as "a result produced by a fortuitous cause"); *Davis v. Raleigh Rental Center*, 58 N.C. App. 113, 116, 292 S.E. 2d 763, 766 (1982) ("Unusualness and unexpectedness" are the essence of an accident).

Evidence which satisfies the requirements of an interruption of the work routine and the introduction of unusual conditions is typified by *Gladson v. Piedmont Stores*, 57 N.C. App. 579, 292 S.E. 2d 18, *review denied*, 306 N.C. 556, 294 S.E. 2d 370 (1982), a case in which the court found as a matter of law that an accident occurred when the plaintiff sustained an injury while lifting a crate:

> The heavier than expected and heavier than usual nature of the crate constituted the requisite "unlooked for and untoward event . . . not expected or designed by [plaintiff]." . . . The work routine, the lifting of lighter crates, was interrupted by the introduction of a crate heavier than expected and heavier than usual. This created an unusual condition, an unforeseen event . . . ."

*Id.* at 580-1, 292 S.E. 2d at 19. *See Porter v. Shelby Knit, Inc.*, 46 N.C. App. 22, 264 S.E. 2d 360 (1980) (awarding benefits for plaintiff's back injury where there was evidence that plaintiff's

normal work routine was interrupted when she had to pull a rod out of an unusually tight bolt of cloth, and evidence that the effort she exerted in so doing was unusual).

In the case at bar, we find no comparable unlooked for or untoward event interrupting the plaintiff's work routine. As stated in the order of the Deputy Commissioner,

> The only interruption of claimant's work routine consisted of the pop in the left knee or the manifestation of injury itself. The terms "injury" and "accident" as used in the Workers' Compensation Act are not synonymous. *Rhinehart v. Super Market*, 271 N.C. 586, 157 S.E. 2d 1 (1967).

Circumstances sufficient to constitute an interruption of a given work routine typically involve an undertaking by the employee of duties not usual and customary. *Key v. Woodcraft, Inc.*, 33 N.C. App. 310, 235 S.E. 2d 254 (1977), contrasts with the instant case and gives an example of a factual context where plaintiff's customary job duties were interrupted. In *Key*, the plaintiff was a machine operator whose work almost exclusively entailed the handling of finished lumber. On the day in question, the plaintiff ruptured a disc when he attempted to help a fellow employee raise a large piece of scrap lumber. This Court stated that this evidence showed that the plaintiff was *not* carrying out his usual and customary duties, and affirmed the award of benefits made by the Industrial Commission.

The evidence in the case before us demonstrates exactly the opposite—that plaintiff was engaged in his usual and customary duties. Plaintiff was hired to perform a number of tasks connected with his employer's business of home improvement. Shingling was one of those tasks and was therefore a part of, rather than an interruption of, plaintiff's work routine. Plaintiff argues that he was hired as a carpenter, and that his normal work routine as a carpenter was therefore interrupted by the shingling job. The record reveals that plaintiff's assigned duties encompassed more than carpentry and hence we reject plaintiff's argument.

In *Faires v. McDevitt and Street Co.*, 251 N.C. 194, 110 S.E. 2d 898 (1959), the plaintiff, a carpenter, received his injury while stripping concrete forms. This job involved using crowbars and

hammers to remove the forms from the hardened concrete that had been poured into the forms, and also to pull nails from the bottoms of the forms. There was evidence that this was not the sort of work usually done by the plaintiff, but instead was customarily done by laborers.

The evidence before us differs significantly from that of *Faires*. Plaintiff's testimony that he was hired as a carpenter furnishes only a superficial parallel. Unlike the evidence in *Faires*, the evidence before us does not support the conclusion that plaintiff was working at a job other than that for which he was hired when he was injured. An examination of the record satisfies us that regardless of whether plaintiff's job title was actually that of "carpenter," plaintiff was in fact hired to do a variety of jobs associated with home improvement. Shingling was one of those jobs. Plaintiff even testified that he had already worked on another shingling job prior to the one during which he sustained his injury. Shingling was therefore one of plaintiff's usual and customary duties.

There was evidence indicating that defendant did not obtain many shingling jobs, but we cannot say that the infrequency of shingling jobs rendered such jobs interruptions of plaintiff's work routine where plaintiff was hired to do an unspecified number of tasks related to home improvement. The assigning of an employee to a particular task where the work routine for that employee involves a variety of tasks does not necessarily constitute an interruption of the work. *See Hewett v. Supply Co.*, 29 N.C. App. 395, 224 S.E. 2d 297, *review denied*, 290 N.C. 550, 226 S.E. 2d 510 (1976) (no accident where plaintiff was employed as a yard worker and at the time of injury had been assigned work as a painter).

Furthermore, even if we were to find shingling an interruption of the plaintiff's normal work routine — and we emphasize that we do not — mere interruption of the work routine does not by itself insure the finding of a compensable accident. The interruption must introduce "unusual conditions likely to result in unexpected consequences." *See Adams v. Burlington Industries, supra.* For example, in *Faires v. McDevitt and Street Co., supra,* the plaintiff not only established an interruption of his normal work routine by producing evidence that he did not customarily perform the job during the performance of which he was injured,

he also produced evidence of the extreme strain exerted in executing a task ordinarily carried out by two workers. The Supreme Court held that the hernia sustained by the plaintiff was an injury resulting from accident and awarded the plaintiff benefits. *Accord, Adams v. Burlington Industries,* 61 N.C. App. 258, 262, 300 S.E. 2d 455, 457 (1983) ("extra exertion and twisting movements . . . support the conclusion that plaintiff's injury resulted from an unexpected and unforeseen event . . ."). *Cf. Hewett v. Supply Co., supra* (no compensable accident where evidence merely showed that plaintiff, in climbing out of a cement bin he was painting, moved from a squatting to a standing position); *Southards v. Motor Lines,* 11 N.C. App. 583, 181 S.E. 2d 811 (1971) (factual findings that it was a hot day, that plaintiff dock worker was hurrying and that the load lifted weighed 120 pounds insufficient to support an award on grounds of accident). There is no evidence before us of unusual conditions, namely, no evidence that in shifting from a bending to a squatting position while shingling the roof, plaintiff unduly exerted himself or made any unusual movements.

"An injury which occurs under normal work conditions is not considered an accident arising out of employment." *Trudell v. Heating & Air Conditioning Co.,* 55 N.C. App. 89, 90, 284 S.E. 2d 538, 540 (1981). Plaintiff's knee injury occurred under normal work conditions. The evidence before us does not support an award of benefits under North Carolina's Workers' Compensation Act on the grounds of injury suffered as a result of an accident.

Reversed.

Judges BRASWELL and EAGLES concur.