***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with minor modification.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer. *Page 2 
3. Employer-defendant is self-insured and Gallagher Bassett Insurance Company is the Third-Party Administrator.
4. Plaintiff alleges that she was injured on or about 22 July 2003 and 10 October 2003 arising out of and in the course of employment.
5. Plaintiff alleges she has sustained injuries to her right arm, resulting in a 70% permanent partial impairment rating to her arm, and further that she is permanently and totally disabled. Defendants allege that plaintiff received a rating and payout for a previous work-related upper extremity shoulder injury based on a 25% permanent partial disability rating to the right arm and that she is not permanently and totally disabled as a result of the alleged work-related injuries at defendant-employer.
6. Plaintiff's average weekly wage at the date of injury was $570.00.
7. Plaintiff claims compensation for temporary total disability for the period 17 October 2003 to the present as well as compensation for permanent and total disability; partial disability; and permanent partial disability pursuant to N.C. Gen. Stat. §§ 97-29, 97-30, and 97-31
of the Workers' Compensation Act.
8. Plaintiff last worked for defendant-employer on or about 17 October 2003 and has not returned to work.
 ***********
The following were stipulated into evidence as:
 STIPULATED EXHIBITS a. The Pretrial Agreement, marked as stipulated exhibit 1.
 b. A group plaintiff's medical records, tabbed 1-20, marked as stipulated exhibit 2. *Page 3 
 ***********
The following was entered into evidence during the hearing as an:
 EXHIBIT
A statement signed by Janice Lamb, marked as defendant's exhibit 1.
 *********** ISSUE PRESENTED
Whether plaintiff suffered a compensable injury by accident or an occupational disease to her right arm on or about 22 July 2003 and/or 10 October 2003, and, if so, to what medical treatment and/or workers' compensation disability benefits is plaintiff entitled, if any?
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following: FINDINGS OF FACT
1. Plaintiff began her job as a machine operator with defendant-employer on 29 May 2003. Plaintiff's job as a machine operator required standing, pushing, and pulling.
2. Plaintiff testified at the hearing before the Deputy Commissioner that she did not sustain an injury on 22 July 2003, and alleged that the only injury occurred on 10 October 2003. Plaintiff testified that she was injured when material in a machine became stuck as she tried to pull the material out of the machine. Pulling material out of machines is a normal duty completed by employees in plaintiff's position.
3. The task described by plaintiff as causing her pain on 10 October 2003 was not abnormal and, furthermore, was completed as part of her normal job duties. Nothing unusual happened as plaintiff completed this task. Plaintiff did not slip, trip, or fall. *Page 4 
4. Plaintiff was performing a usual and customary duty in the usual way when she alleges she was injured on 10 October 2003. There was no interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
5. Although plaintiff testified that she had no right arm trouble before her alleged injury of 10 October 2003, numerous medical records show otherwise.
6. The stipulated medical records report that plaintiff had a workplace neck injury in 1993 and subsequent symptoms that radiated into her arms. Specifically, a 17 September 1993 medical note from the Cape Fear Orthopaedic Clinic reads, "Symptoms are on the left and this mild finding is on the right."
7. A 21 February 1995 letter from Dr. Richard D. Serano diagnosed plaintiff with a chronic myofacial pain syndrome of uncertain severity and chronicity.
8. A note from Triangle Orthopaedic Associates generated from a 24 February 2004 visit reflects that plaintiff complained of some chronic right hand numbness and tingling for which she had negative nerve conduction study in 1995.
9. A medical note dated 24 July 1997 states that "[plaintiff] comes in with neck, back, and shoulder pain from gardening yesterday. She was feeling fine before she got out in the garden and started chopping and doing some things around."
10. A 15 October 2003 note from Kinston Orthopaedic Sports Medicine Center states "[plaintiff] said the pain started around September 22nd when she was working . . . [plaintiff] has been having some pain in her hands and arms before this."
11. Janice Lamb, plaintiff's co-worker, testified at the hearing about a workplace encounter she had with plaintiff in the *Page 5 
defendant-employer's break room the morning of 29 September 2003, a Monday. At that time plaintiff told Ms. Lamb that she was waiting to see defendant-employer's nurse because plaintiff had slipped and fallen over the weekend, thereby hurting her arm. Plaintiff further related to Ms. Lamb that she had gone to the Emergency Room with her husband following the fall. Ms. Lamb's testimony is supported by a signed statement entered into evidence. This signed statement displays a 16 October 2003 fax date along the top.
12. Contemporaneous medical records do not give a history of a work injury on 10 October 2003 while plaintiff was pulling material from a machine. On 14 October 2003, plaintiff was seen by Dr. Amal Youssef at Goshen Medical Center. At that appointment plaintiff reported having a knot on her right arm. Plaintiff stated that this knot had started the last Saturday of September when she was working. Plaintiff reported no specific event or injury. Plaintiff saw Dr. Classen at Kinston Orthopaedics on 15 October 2003 and again made no mention of any specific event or injury. Plaintiff reported to Dr. Classen that her pain started around 22 September 2003 when she was working. Dr. Classen noted that plaintiff complained of a lump in her elbow which Dr. Classen nor the assisting doctor could see.
13. Throughout this claim plaintiff has received various releases to return to work. Plaintiff was released by Air Force medical personnel to return to "normal activities e.g. work/exercise on 9 September 2003." Dr. Charles Classen released plaintiff to light work from 15 October 2003 to 29 October 2003. Dr. David Dellaero released plaintiff to return to work at light duty as of 12 July 2004, with these restrictions lasting until 1 September 2004.
14. Subsequent to her alleged injury of 10 October 2003 plaintiff did not return to work until 17 October 2003, the day she was terminated, although she had not been written out of work prior to that date. Specifically, plaintiff did not report to work, call defendant-employer, or provide a medical note excusing her from work for the period from 11 October 2003 through 13 October 2003. Defendant-employer had light-duty work available for plaintiff and expected *Page 6 
plaintiff to report to work those three days. However, during these three days she did not report to work, nor did she call defendant-employer.
15. It is defendant-employer's policy to terminate any employee who does not call in or report to work for three days. Plaintiff was terminated as a result of her unexcused absences on 11, 12, and 13 October 2003 because she did not report to work, provide a doctor's note, or call defendant-employer.
16. On 2 December 2003, plaintiff was seen at Wayne Memorial Hospital for an MRI of her right arm. This MRI revealed a small partial tear of the distal biceps tendon.
17. On 26 April 2004, Dr. Dellaero preformed surgery on plaintiff for her biceps tendon partial tear. Dr. Dellaero described the surgery as an "uncomplicated procedure."
18. On 12 July 2004, Dr. Dellaero released plaintiff to return to light duty work with no lifting over ten pounds with her right arm and no pushing or pulling over fifteen pounds. Plaintiff has presented no evidence that she attempted to return to any work after 12 July 2004 or looked for work after this release.
19. On 10 June 2005, a Functional Capacity Evaluation (FCE) was undertaken to assess plaintiff. The FCE Summary report concluded that plaintiff used sub-maximal effort during this evaluation.
20. During his deposition testimony, Dr. Dellaero testified that he did not agree with the FCE's conclusions.
21. Larry Herring, plaintiff's supervisor with defendant-employer, testified that had plaintiff not been terminated for unexcused absences, there were several jobs available to her with defendant-employer that had lighter physical requirements. For example, light packing jobs were available. *Page 7 
22. Plaintiff's testimony regarding the circumstances surrounding her alleged injury of 10 October 2003 and subsequent related events is inconsistent internally and conflicts with documentary, medical, and other evidence.
23. Regarding plaintiff's alleged disability, having considered the testimony and evidence of Dr. Dellaero and the other medical providers who have evaluated and treated plaintiff subsequent to 10 October 2003, along with their relative expertise and experience, as well as the circumstances of their involvement with plaintiff's treatment, the Full Commission gives greater weight to the testimony and expert opinions of Dr. Dellaero.
24. Plaintiff has not proven by the greater weight of the evidence that she sustained a compensable injury by accident at her workplace on or about 22 July 2003 or 10 October 2003.
25. Plaintiff has not proven by the greater weight of the evidence that her job for defendant-employer placed her at increased risk of contracting an occupational disease or that her employment with defendant-employer caused her to contract an occupational disease.
26. Defendant-employer terminated plaintiff for reasons unrelated to her workers' compensation injury and for which a non-injured employee would have been terminated.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements. N.C. Gen. Stat. §§ 97-2(6), 97-2(9); Harvey v. Raleigh Police Department, 96 N.C. App. 28,384 S.E.2d 549, disc. rev. denied, 325 N.C. 706, 388 S.E.2d 454 *Page 8 
(1989); Gaddy v. Kern, 17 N.C. App. 680, 195 S.E.2d 141, 143, cert.denied 283 N.C. 585, 197 S.E.2d 873 (1973).
2. In this case, plaintiff has failed to meet her burden of proving by the greater weight of the evidence that she sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer on or about 22 July 2003 or 10 October 2003. N.C. Gen. Stat. §§ 97-2(6), 97-2(9); Harvey v. Raleigh Police Department,96 N.C. App. 28, 384. S.E.2d 549, disc. rev. denied, 325 N.C. 706, 388 S.E.2d 454(1989); Gaddy v. Kern, 17 N.C. App. 680, 195 S.E.2d 141,143, cert denied 283 N.C. 585, 197 S.E.2d 873 (1973).
3. Assuming, arguendo, that the events of 10 October 2003 occurred as plaintiff described, in order for plaintiff's injury to be compensable under the Workers' Compensation Act, it must have been the result of an "accident" as defined by the law. N.C. Gen. Stat. § 97-2(6). To be compensable, an accident must involve more than the carrying on of the usual and customary duties in the usual way to justify an award of compensation. Davis v. Raleigh Rental Center, 58 N.C. App. 113,292 S.E.2d 763 (1982). An injury that occurs under normal working conditions is not considered an accident. Poe v. Acme Bldrs.,69 N.C. App. 147, 316 S.E.2d 338, cert. denied, 311 N.C. 762,321 S.E.2d 143 (1984). In this case, plaintiff's alleged injury occurred under normal working conditions and involved the carrying on of her usual and customary duties in the usual way. There is insufficient evidence to prove that anything unusual happened to cause an injury as plaintiff worked on 22 July 2003 or 10 October 2003. Furthermore, plaintiff did not stumble, trip, slip, or fall. N.C. Gen. Stat. § 97-2(6); Anderson v.Motor Co., 233 N.C. 372, 64 S.E.2d 265 (1951).
4. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), plaintiff must prove that the disease is characteristic of individuals engaged in the *Page 9 
particular trade or occupation in which the plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the plaintiff's employment. N.C. Gen. Stat. § 97-53(13);Rutledge v. Tutlex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).Fann v. Burlington Indust., 59 N.C.App. 512, 296 S.E.2d 819 (1982);Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
5. In this case, plaintiff has not proven by the greater weight of the evidence that her employment with defendant-employer placed her at greater risk than the general public of contracting an occupational disease or that her employment with defendant caused her to contract an occupational disease. N.C. Gen. Stat. § 97-53(13).
6. Plaintiff has the burden of proving disability, and plaintiff must prove both the existence of and the extent of the disability. Hall v.Chevrolet Co., 263 N.C. 569, 575, 139 S.E. 2d 857, 861 (1965).
7. Disability is defined by the Act as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment." N.C. Gen. Stat. § 97-2(9). The greater weight of the evidence in this case fails to establish that plaintiff's alleged injury of 10 October 2003 caused plaintiff to suffer a diminution of her wage-earning capacity. Therefore, plaintiff is not entitled to temporary partial disability or temporary total disability benefits. N.C. Gen. Stat. §§ 97-2(9); 97-29; 97-30; Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277 (2001); Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993);Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E. 2d 682 (1982). *Page 10 
8. Medical evidence that rests on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v. HickoryBus. Furn., 353 N.C. 277, 538 S.E.2d 912 (2000). In the instant case, dubious histories related by plaintiff form the bases of information contained in medical records and other evidence.
9. Plaintiff's termination from employment from defendant-employer on 17 October 2003 is attributable to reasons, unrelated to the 10 October 2003 alleged incident, for which any non-injured employee would have been terminated. Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228,472, S.E.2d 397 (1996).
10. Given the foregoing, plaintiff's claim is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-1, et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER 1. Under the law, this claim must be, and hereby is DENIED.
 2. Each side shall bear its own costs.
This the 12th day of December 2008.
S/___________________ BUCK LATTIMORE COMMISSIONER
 CONCURRING: *Page 11 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1